**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA,

and

STATE OF WEST VIRGINIA, by and through
the WEST VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

      Plaintiffs,

      v.

BERKELEY COUNTY PUBLIC SERVICE
SEWER DISTRICT,

      Defendant,

and

BERKELEY COUNTY PUBLIC SERVICE
STORM WATER DISTRICT,

      Fed. R. Civ. P. 20(a)(2)(A) Defendant.

> ELECTRONICALLY
> FILED
> Nov 17 2021
> U.S. DISTRICT COURT
> Northern District of WV

Civil Action No.    **3:21-CV-179 (Groh)**

**COMPLAINT**

      The United States of America, by authority of the Attorney General of the United States

and acting at the request of the Administrator of the United States Environmental Protection

Agency ("EPA"), and the State of West Virginia, by and through the West Virginia Department

of Environmental Protection ("WVDEP"), file this Complaint, and allege as follows:

**NATURE OF ACTION**

      1.     This is a civil action for injunctive relief and civil penalties brought against the

Berkeley County Public Service Sewer District (the "Sewer District") pursuant to Sections

309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and (d); and Chapter 16,

Article 1, Section 9a of the West Virginia Code, W. Va. Code § 16-1-9a. The claims are based on violations of the CWA and the West Virginia Water Pollution Control Act ("WPCA") in connection with the Sewer District's ownership and operation of a sewage collection system, a pretreatment plant and multiple wastewater treatment plants, and a municipal separate storm sewer system ("MS4") in Berkeley County, West Virginia. Berkeley County Public Service Storm Water District (the "Storm Water District") is included as a Fed. R. Civ. P. 20(a)(2)(A) defendant because it has taken over jurisdiction of the Berkeley County MS4 and is responsible going forward for compliance with the applicable permit.

## JURISDICTION, VENUE, AND AUTHORITY

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

3.      This Court has supplemental jurisdiction over the WVDEP claims alleged herein pursuant to 28 U.S.C. § 1367(a) because the WVDEP claims are so related to the federal claims as to form part of the same case or controversy.

4.      Venue is proper in the Northern District of West Virginia pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because it is the location where the alleged violations occurred.

5.      Authority to bring this action is vested in the United States Department of Justice under Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. § 516.

6.      Authority to bring this action on behalf of the State of West Virginia is vested in the WVDEP under W. Va. Code §§ 22-11-7, 22-11-22, 22-12-5, and 22-12-10.

## NOTICE

7.      Notice of the commencement of this action has been given to WVDEP pursuant

to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## STATUTORY AND REGULATORY FRAMEWORK

### Clean Water Act

8.      The objective of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA establishes a national goal to eliminate the discharge of pollutants into navigable waters. 33 U.S.C. § 1251(a)(1).

9.      Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" except, *inter alia*, in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

10.     The term "person" is defined to include municipalities with jurisdiction over disposal of sewage, industrial wastes, or other wastes. 33 U.S.C. § 1362(4) and (5).

11.     The term "discharge of a pollutant" means any addition of any pollutant to navigable waters from any point source. 33 U.S.C. § 1362(12).

12.     Section 502(6) of the CWA, 33 U.S.C. § 1362(6), includes sewage in the definition of "pollutant."

13.     The term "navigable waters" means waters of the United States, including the territorial seas. 33 U.S.C. § 1362(7).

### NPDES Program

14.     Section 402 of the CWA, 33 U.S.C. § 1342, provides authority for the EPA Administrator to issue NPDES permits for the discharge of any pollutant, consistent with other provisions of the CWA. Such permits allow the discharge of pollutants by any person into the

waters of the United States subject to the terms and conditions set forth therein.

15.     Section 402(a)(2) of the CWA, 33 U.S.C. § 1342(a)(2), directs the Administrator to prescribe conditions for NPDES permits to assure compliance with specified provisions of the CWA. Such conditions include effluent limits, sampling requirements, and reporting requirements. 33 U.S.C. §§ 1311, 1318, 1342(a)(2).

16.     Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents which are discharged from point sources.

17.     Section 402(b) of the CWA, 33 U.S.C. § 1342(b), provides that a state may establish its own permit program, and after receiving EPA's authorization of its program, may issue NPDES permits within its jurisdiction. EPA retains concurrent enforcement authority pursuant to Section 402(i) of the CWA, 33 U.S.C. § 1342(i).

18.     At all times relevant to this Complaint, the State of West Virginia has been authorized by EPA to issue NPDES permits.

**Regulation of Storm Water**

19.     Discharges of municipal and industrial storm water, including discharges from MS4s, are subject to separate permitting requirements under Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

20.     The term "storm water" means "storm water runoff, snow melt runoff, and surface runoff and drainage." 40 C.F.R. § 122.26(b)(13).

21.     EPA may issue general permits covering one or more categories of storm water discharges. 40 C.F.R. § 122.28. Pursuant to 40 C.F.R. § 123.25, authorized state permitting programs may include provisions for general permits as well.

4

22.     The term "municipal separate storm sewer system" or "MS4" means "a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains): (i) [o]wned or operated by a State, city, town, borough, county, parish, district, association, or other public body (created by or pursuant to State law)…that discharges to waters of the United States; (ii) [d]esigned or used for collecting or conveying storm water; (iii) [w]hich is not a combined sewer; and (iv) [w]hich is not part of a Publicly Owned Treatment Works…." 40 C.F.R. § 122.26(b)(8).

23.     EPA has promulgated regulations to address storm water discharges from MS4s. 40 C.F.R. §§ 122.26, 122.30-122.37. The applicable requirements vary depending on whether the MS4 is classified as a "small," "medium," or "large" MS4. "Small" MS4s include separate storm sewers owned or operated by municipalities located in a place with a population of 100,000 or less, as determined by the 1990 Decennial Census by the Bureau of the Census. 40 C.F.R. §§ 122.26(b)(16), 122.26(b)(7).

24.     Pursuant to 40 C.F.R. § 122.32(a)(1), all small MS4s located in an "urbanized area" (as determined by the latest Decennial Census by the Bureau of Census) are regulated small MS4s. 40 C.F.R. § 122.33(a) and (b) require operators of regulated small MS4s to seek authorization to discharge under a general or individual NPDES permit. If the small MS4 seeks coverage under a general NPDES permit, it must submit a Notice of Intent ("NOI") to the NPDES permitting authority.

**Enforcement**

25.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator of EPA to commence a civil action to obtain appropriate relief, including a permanent or temporary

injunction, when any person violates any condition or limitation in a NPDES permit issued

pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. The United States Department of Justice

has authority to bring this action on behalf of EPA pursuant to Section 506 of the CWA, 33

U.S.C. § 1366.

26.     Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4,

any person who violates any condition or limitation contained in a NPDES permit issued

pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to

exceed $37,500 per day for each violation that occurred after December 6, 2013 through

November 2, 2015; and not to exceed $56,460 per day for each violation which takes place after

November 2, 2015.

### West Virginia Water Pollution Control Act

27.     At all times relevant to this Complaint, the State of West Virginia has been

authorized by EPA to administer an NPDES program for regulating the discharge of pollutants

into navigable waters within the state's jurisdiction. 47 Fed. Reg. 22,363-01 (May 24, 1982).

Pursuant to W. Va. Code §§ 22-1-5, 22-1-7, and 22-11-4(a), WVDEP is the state regulatory

agency that administers the NPDES permit program in West Virginia.

28.     Section 8 of the WPCA, W. Va. Code § 22-11-8, prohibits the discharge of any

pollutant by any person into waters of the State of West Virginia, except, *inter alia*, in

compliance with a West Virginia NPDES permit issued pursuant to the WPCA.

29.     Section 22 of the WPCA, W. Va. Code § 22-11-22, authorizes WVDEP to

commence a civil action for injunctive relief to compel compliance with, and enjoin violations

of, any provision of the WPCA or any term or condition of an NPDES permit issued under the

WPCA. Section 22 of the WPCA also provides that any person who violates any provision of an

NPDES permit issued pursuant to Section 8 of the Water Pollution Control Act, W. Va. Code § 22-11-8, is subject to a civil penalty of up to $25,000 per day for each violation.

## DEFENDANTS

### The Sewer District

30.     The Sewer District is a public corporation created under West Virginia law, located in Berkeley County, West Virginia. The Sewer District has the power to sue and be sued. W. Va. Code § 16-13A-3.

31.     The Sewer District is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4).

32.     The Sewer District owns and operates a sewage collection system, which consists of sewers, manholes, and other associated appurtenances (collectively the "Sewage Collection System") that serves approximately 101,000 residents in Berkeley County, West Virginia.

33.     The Sewer District owns and operates a pretreatment plant and numerous wastewater treatment plants in Berkeley County, West Virginia, that constitute "treatment works" within the meaning of Sections 502(26) and 212(2)(A) of the CWA, 33 U.S.C. §§ 1362(26) and 1292(2)(A), and "publicly owned treatment works" ("POTW"), within the meaning of 40 C.F.R. §§ 122.2 and 403.3(q).

34.     At all times relevant to this Complaint, the Sewer District operated the municipal separate storm sewer system for Berkeley County, West Virginia, with the exception of stormwater activities occurring within the city limits of Martinsburg, West Virginia, those under the authority of the Berkeley County Board of Education, and those under the authority of the West Virginia Division of Highways (the "Berkeley County MS4").

**The Storm Water District**

35.     The Storm Water District is a public corporation created under West Virginia law, located in Berkeley County, West Virginia. The Storm Water District has the power to sue and be sued. W. Va. Code § 16-13A-3.

36.     The Storm Water District is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4).

37.     On July 26, 2018, the Storm Water District assumed jurisdiction over the Berkeley County MS4.

38.     The Storm Water District has applied for NPDES permit coverage of the Berkeley County MS4. Upon issuance of the permit, the Storm Water District will be responsible for ensuring that the Berkeley County MS4 complies with applicable NPDES permit terms and conditions.

39.     The Storm Water District is a permissively joined party to this action, because the right to relief relating to the Berkeley County MS4 is asserted against the Storm Water District jointly and severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P. 20(a)(2)(A).

## GENERAL ALLEGATIONS

**Sewage Collection System**

40.     The Sewer District operates and maintains the Sewage Collection System, which consists of multiple individual collection systems containing a total of approximately 350 miles of sewer pipes and interceptor pipes of various sizes. The Sewage Collection System is designed to collect wastewater from residences, businesses, and industrial users within Berkeley County

and convey the wastewater to treatment plants, where it is treated before being discharged into nearby water bodies.

41.     At all relevant times, the Sewage Collection System conveyed polluted wastewater to four major wastewater treatment plants ("WWTPs"), a pretreatment facility known as the "Ecolab Pretreatment Facility," a lagoon WWTP servicing the Woods II Subdivision known as the "Woods II Lagoon Plant," wastewater treatment plants servicing the Forest Heights subdivision areas known as the "Forest Heights I, II, and II Treatment Systems," and multiple smaller treatment plants with a flow of less than 50,000 gallons per day operated by the Sewer District. The treatment plants operated by the Sewer District are collectively referred to in this Complaint as the "Treatment Works."

42.     The wastewater discharged from the Treatment Works contains various "pollutants" as that term is defined in 33 U.S.C. § 1362(6), 40 C.F.R. § 122.2, and W. Va. Code § 22-11-3(16), including nitrogen, aluminum, fecal coliform, and phosphorus.

43.     The Treatment Works discharge wastewater from pipes and other conveyances that are "point sources" within the meaning of 33 U.S.C. § 1362(14) and W. Va. Code § 22-11-3(15), to waters of the United States, within the meaning of 33 U.S.C. § 1362(7) and 40 C.F.R. § 122.2, as well as waters of the State within the meaning of W. Va. Code § 22-11-3(23).

44.     Discharges from the Treatment Works are subject to the requirements of applicable NPDES permits issued by WVDEP pursuant to 33 U.S.C. § 1342 and W. Va. Code § 22-11-8. The respective NPDES permits contain effluent limitations prohibiting discharges of specified pollutants in excess of numeric monthly average, daily maximum, annual total, instantaneous min/max, and/or daily minimum limits.

45.     The applicable NPDES permits impose self-monitoring and self-reporting

requirements, including the quarterly submission to WVDEP of discharge monitoring reports ("DMRs"), which summarize discharge monitoring data and indicate noncompliance with permit limits.

46.     On December 7-10, 2015, EPA inspected several of the Treatment Works operated by the Sewer District for compliance with applicable NPDES permit requirements (the "2015 Inspection").

### Municipal Separate Storm Sewer

47.     The Berkeley County MS4 is a system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, and storm drains) designed to collect, convey, and discharge storm water into nearby receiving waters.

48.     The Berkeley County MS4 is a small MS4, as defined in 40 C.F.R. § 122.26(b)(16), and regulated pursuant to 40 C.F.R. §§ 122.32(a)(1) and 122.34(a). As such, the Berkeley County MS4 must be operated under an NPDES permit that requires the implementation of six specified minimum control measures ("MCMs") designed to prevent non-stormwater discharges to stormwater pipes. The six MCMs include: 1) public education and outreach; 2) public participation/involvement; 3) illicit discharge detection and elimination; 4) construction site runoff control; 5) post-construction runoff control; and 6) pollution prevention/good housekeeping. *See* 40 C.F.R. §§ 122.33-34.

49.     The Berkeley County Council first obtained coverage for the Berkeley County MS4 under General NPDES Water Pollution Control Permit No. WV0116025 (the "MS4 Permit").

50.     In January of 2011, the Sewer District assumed ownership and operation of the Berkeley County MS4. In March of 2011, WVDEP approved the transfer of the MS4 Permit,

NPDES Permit No. WV0116025, individual registration WVR030019, from the Berkeley County Council to the Sewer District. At the time, NPDES Permit No. W0116025, individual registration WVR030019, was in effect from July 22, 2009 to July 22, 2014 (the "2009-2014 MS4 Permit").

51.     The MS4 Permit was reissued to the Sewer District on July 11, 2014, with an effective date of August 11, 2014 and an expiration date of August 11, 2019 (the "2014-2019 MS4 Permit").

52.     On May 22-23, 2014, EPA inspected the Sewer District's MS4 program for compliance with applicable NPDES permit requirements (the "2014 MS4 Inspection").

53.     On April 27-28, 2016, WVDEP inspected the Sewer District's MS4 program for compliance with applicable NPDES permit requirements (the "2016 MS4 Inspection").

54.     On July 26, 2018, the Berkeley County Council created the Storm Water District. At that time, the Berkeley County Council gave the Storm Water District jurisdiction over all stormwater activities within the boundaries of Berkeley County, West Virginia, with the exception of those occurring within the city limits of Martinsburg, West Virginia, those under the authority of the Berkeley County Board of Education, and those under the authority of the West Virginia Division of Highways.

55.     The 2014-2019 MS4 Permit has been administratively extended under Part 1.A.4.a. of the Permit until a new MS4 permit is issued to the Storm Water District for the Berkeley County MS4.

### FIRST CLAIM FOR RELIEF
**Violations of NPDES Permit No. WV0082759**
**Major WWTPs and Ecolab Pretreatment Facility**

56.     The allegations of the foregoing Paragraphs are realleged and incorporated herein

by reference.

57.     The Sewer District's operation of the four major WWTPs identified as

Opequon/Hedgesville Plant (Outlet 001), Inwood Plant (Outlet 002), Baker Heights Plant (Outlet

003), North End WWTP (Outlet 004), and associated collection systems, is subject to the

requirements of NPDES Permit No. WV0082759, issued under Section 402 of the CWA, 33

U.S.C. § 1342.

58.     The Sewer District's operation of the pretreatment plant known as the Ecolab

Pretreatment Facility (Internal Outlet 103), which accepts wastewater from Ecolab, Inc. for

pretreatment before conveying the pretreated wastewater to the Baker Heights Plant, is also

subject to the requirements of NPDES Permit No. WV0082759.

59.     As described below, the Sewer District has violated multiple conditions and

limitations in NPDES Permit No. WV0082759.

**Effluent Limit Violations**

60.     NPDES Permit No. WV0082759 contains effluent limitations for multiple

pollutants, including aluminum, nitrogen, fecal coliform, phosphorus, and biological oxygen

demand ("BOD").

61.     Based on DMRs submitted to WVDEP, the Sewer District has exceeded

applicable effluent limitations in NPDES Permit No. WV0082759 on over 500 occasions since

January, 2016. *See* Appendix A.

**Violations of Prohibition on Objectionable Characteristics**

62.     At all relevant times, Section C.11 of NPDES Permit No. WV0082759 prohibited

discharges that caused certain specified objectionable characteristics in waters of the State,

including discharges that cause distinctly visible floating or settleable solids, scum, foam, or oily

slicks; materials in concentrations that are harmful, hazardous, or toxic to man, animal, or aquatic life; distinctly visible color; or concentrations of bacteria that may impair or interfere with the designated uses of the affected waters;

63.     At the 2015 Inspection, the EPA inspection team observed the following violations of Section C.11 of NPDES Permit No. WV0082759:

    a.   At the Baker Heights WWTP, accumulated grits and solids at the facility outfall as well as approximately 200 feet downstream in Opequon Creek, in violation of the prohibition against discharges that cause State waters to contain distinctly visible floating or settleable solids.

    b.   At the North End WWTP: black-bio growth at the facility outfall containing concentrated bacteria, in violation of the prohibition against discharges that cause State waters to contain concentrations of bacteria that may impair or interfere with the designated uses of the affected waters.

**Operation and Maintenance Violations**

64.     At all relevant times, Appendix A, Part II.1 of the NPDES Permit No. WV0082759 required the Sewer District to "properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit. Proper operation and maintenance also includes adequate laboratory controls, and appropriate quality assurance procedures."

65.     At the 2015 Inspection, the EPA inspection team observed the following violations of Appendix A, Part II.1 of NPDES Permit No. WV0082759:

    a.   At the Ecolab Pretreatment Facility: no identifiable quality assurance procedures in process control monitoring (e.g. mixed liquor/suspended solids and sludge volume index analyses) for the Ecolab Pretreatment Facility.

    b.   At the Ecolab Pretreatment Facility: the dissolved air flotation ("DAF") was out of service along with the pre-equalization sump pump.

    c.   At the Baker Heights WWTP: UV lamps installed to treat wastewater had biological growth preventing the disinfection process from operating properly.

**Relief**

66.     Each violation of NPDES Permit No. WV0082759 is a violation of a condition or limitation in an NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and a violation of W. Va. Code § 22-11-8.

67.     Unless enjoined, the Sewer District's violations are likely to continue.

68.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Section 22 of the WPCA, W. Va. Code § 22-11-22, the Sewer District is liable for injunctive relief.

69.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, the Sewer District is liable for civil penalties of up to $37,500 per day of violation for each violation of NPDES Permit No. WV0082759 occurring after December 6, 2013 through November 2, 2015; and up to $56,460 per day of violation for each violation occurring after November 2, 2015.

70.     Pursuant to W. Va. Code § 22-11-22, the Sewer District is liable for civil penalties up to $25,000 per day for each violation of NPDES Permit No. WV0082759.

**SECOND CLAIM FOR RELIEF**
**Violations of NPDES Permit No. WV0103161**
**Woods II Lagoon Plant**

71.     The allegations of the foregoing Paragraphs are realleged and incorporated herein by reference.

72.     The Sewer District's operation of the Woods II Lagoon Plant and associated wastewater collection system is subject to the requirements of NPDES Permit No. WV0103161, issued under Section 402 of the CWA, 33 U.S.C. § 1342.

73.     The Sewer District has violated multiple conditions and limitations in NPDES Permit No. WV0103161, as described below.

**Effluent Limit Violations**

74.     NPDES Permit No. WV0103161 contains effluent limitations for multiple

pollutants, including nitrogen, copper, chlorine, and suspended solids.

75.     Based on DMRs submitted to WVDEP, the Sewer District has exceeded

applicable effluent limitations in NPDES Permit No. WV0103161 on at least 320 occasions since

January, 2016. *See* Appendix B.

**Operation and Maintenance Violations**

76.     At all relevant times, Appendix A, Part II.1 of the NPDES Permit No.

WV0103161 required the Sewer District to "properly operate and maintain all facilities and

systems of treatment and control (and related appurtenances) which are installed or used by the

permittee to achieve compliance with the conditions of this permit. Proper operation and

maintenance also includes adequate laboratory controls, and appropriate quality assurance

procedures."

77.     At the 2015 Inspection, the EPA inspection team observed the following

violations of Appendix A, Part II.1 of NPDES Permit No. WV0103161 at the Woods II Lagoon

Plant:

        a.   influent bar screens were coated with rags, solids, and debris. These screens must be kept free of debris to allow them to operate properly.

        b.   the chemical dosing pump for the dechlorination system was not operating properly.

        c.   a hatch to a wet well along the treatment train was broken and not closing all the way. This allowed leaves and other debris to accumulate in the wet well, with the potential to pass downstream and inhibit the disinfection process.

78.     At all relevant times, Section C.24 of NPDES Permit No. WV0103161 stated that

"Aquatic vegetation, such as duckweed, must not inhibit the normal biological activities of the

ponds."

79.     At the 2015 Inspection, the EPA inspection team observed that large surfaces of the treatment ponds associated with the Woods II Lagoon Plant were covered in duckweed, in violation of Section C.24.

### Failure to Implement Infiltration and Inflow Program

80.     At all relevant times, Section C.22 of NPDES Permit No. WV0103161, required the Sewer District to implement a program to identify and eliminate sources of infiltration and inflow.

81.     At the 2015 Inspection, EPA determined that the Sewer District did not have a program in place to eliminate inflow and infiltration in the Woods II collection system, in violation of Section C.22.

### Relief

82.     Each violation of NPDES Permit No. WV0103161 is a violation of a condition or limitation in an NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and a violation of W. Va. Code § 22-11-8.

83.     Unless enjoined, the Sewer District's violations are likely to continue.

84.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Section 22 of the WPCA, W. Va. Code § 22-11-22, the Sewer District is liable for injunctive relief.

85.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, the Sewer District is liable for civil penalties of up to $37,500 per day of violation for each violation of NPDES Permit No. WV0082759 occurring after December 6, 2013 through November 2, 2015; and up to $56,460 per day of violation for each violation occurring after November 2, 2015.

86.     Pursuant to W. Va. Code § 22-11-22, the Sewer District is liable for civil

penalties up to $25,000 per day for each violation of NPDES Permit No. WV0103161.

### THIRD CLAIM FOR RELIEF
### Violations of NPDES Permit No. WV0105830
### Forest Heights I, II, and III Treatment Systems

87.    The allegations of the foregoing Paragraphs are realleged and incorporated herein by reference.

88.    At all relevant times, the Sewer District's operation of the wastewater treatment plants identified as Forest Heights I, II, and III Treatment Systems and associated wastewater collection systems was subject to the requirements of NPDES Permit No. WV0105830, issued under Section 402 of the CWA, 33 U.S.C. § 1342. The Forest Heights I Treatment System discharged through permitted Outlet No. 001. The Forest Heights II and III Treatment Systems consisted of two separate parallel package plants which re-combined and discharged through permitted Outlet No. 002.

89.    The Sewer District has violated multiple conditions and limitations in NPDES Permit No. WV0105830, as described below.

90.    In March 2021, the Sewer District decommissioned the Forest Heights I, II, and III plants and diverted the flow to another wastewater treatment plant.

### Effluent Limit Violations

91.    At all relevant times, NPDES Permit No. WV0105830 contained effluent limitations for multiple pollutants, including BOD and fecal coliform.

92.    Based on DMRs submitted to WVDEP, the Sewer District has exceeded applicable effluent limitations in NPDES Permit No. WV0105830 on over 190 occasions since January, 2016. *See* Appendix C.

**Operation and Maintenance Violations**

93.     At all relevant times, Appendix A, Part II.1 of NPDES Permit No. WV0105830 required the Sewer District to "properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit."

94.     At the 2015 Inspection, the EPA inspection team observed the following violations of Appendix A, Part II.1 of NPDES Permit No. WV0105830:

    a.  At the Forest Heights I Treatment System: the plant was corroding in many spots, and holes were forming between different treatment chambers, indicative of poor maintenance that would lead to facility failure.

    b.  At the Forest Heights I, II, and III Treatment Systems: the high level alarm systems for the influent surge tanks/chambers were disabled. The alarm systems are necessary to ensure prompt attention to problems at the surge tanks.

    c.  At the Forest Heights III Treatment System: the UV disinfection chamber was flooded. The Operator indicated that a work order had been submitted and closed out in summer of 2015, but the leak had not been fixed.

    d.  At the Forest Heights II/III Treatment Systems: heavy accumulation of scum and other wastewater debris on the surface of the influent surge tank. Work order document indicated that the surge tank pump had twice malfunctioned (in July 30, 2015 and August 3, 2015), with indications from the Operator that the pump was getting clogged due to the layer of debris within the tank. Scum and debris must be removed from the influent surge tank to allow the plant to operate correctly.

**Relief**

95.     Each violation of NPDES Permit No. WV0105830 is a violation of a condition or limitation in an NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and a violation of W. Va. Code § 22-11-8.

96.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, the Sewer District is liable for civil penalties of up to $37,500 per day of violation for each violation of NPDES Permit No. WV0082759 occurring after December 6, 2013 through

November 2, 2015; and up to $56,460 per day of violation for each violation occurring after November 2, 2015.

97.     Pursuant to W. Va. Code § 22-11-22, the Sewer District is liable for civil penalties up to $25,000 per day for each violation of NPDES Permit No. WV0105830.

<u>FOURTH CLAIM FOR RELIEF</u>
**Violations of NPDES Permit No. WV0103110**
**Package Plants**

98.     The allegations of the foregoing Paragraphs are realleged and incorporated herein by reference.

99.     At all relevant times, the Sewer District's operation of multiple WWTPs for treatment of sewage with a flow of less than 50,000 gallons per day, known as "Package Plants," was subject to the requirements of NPDES General Permit No. WV0103110, issued under Section 402 of the CWA, 33 U.S.C. § 1342.

100.     NPDES General Permit No. WV0103110 contains effluent limitations for multiple pollutants, including BOD and fecal coliform.

101.     Based on DMRs submitted to WVDEP and certified information provided by the Sewer District in response to information requests issued by EPA pursuant to Section 308 of the CWA, 33 U.S.C. § 1318, the Sewer District has exceeded applicable effluent limitations in NPDES Permit No. WV0103110 on over 290 occasions since January, 2016. *See* Appendix D.

102.     Each violation of NPDES Permit No. WV0103110 identified in Appendix D is a violation of a condition or limitation in an NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and a violation of W. Va. Code § 22-11-8.

103.     Unless enjoined, the Sewer District's violations are likely to continue.

104.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Section 22 of

the WPCA, W. Va. Code § 22-11-22, the Sewer District is liable for injunctive relief.

105.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R.

§ 19.4, the Sewer District is liable for civil penalties of up to $37,500 per day of violation for

each violation of NPDES Permit No. WV0082759 occurring after December 6, 2013 through

November 2, 2015; and up to $56,460 per day of violation for each violation occurring after

November 2, 2015.

106.    Pursuant to W. Va. Code § 22-11-22, the Sewer District is liable for civil

penalties up to $25,000 per day for each violation of NPDES Permit No. WV0103110.

## FIFTH CLAIM FOR RELIEF
### Sanitary Sewer Overflows

107.    The allegations of the foregoing Paragraphs are realleged and incorporated herein

by reference.

108.    The Sewer District operates the Sewage Collection System subject to the

requirements of multiple permits issued under Section 402 of the CWA, 33 U.S.C. § 1342,

including NPDES Permit Nos. WV0082759, WV0103161, and WV0105830 (collectively, the

"Sewage Collection System NPDES Permits").

109.    At all relevant times, the Sewage Collection System NPDES Permits have

authorized the discharge of pollutants only from specified point sources (identified in the permit

as one or more numbered "outlets") to specified waters of the United States and/or the State,

subject to limitations and conditions set forth in the NPDES Permits.

110.    At all relevant times, the Sewage Collection System NPDES Permits have

expressly prohibited any discharge from any point other than a permitted treatment system outlet.

The permits have further required that the Sewer District report any prohibited discharge from

the Sewage Collection System to WVDEP.

111.    The Sewer District has reported over 500 sanitary sewer overflow ("SSO") events since January, 2015. *See* Appendix E. Each SSO represents a discharge of sewage from the Sewage Collection System at a point that is not a permitted treatment system outlet, in violation of the Sewage Collection System permits.

112.    Each SSO is a violation of a condition or limitation in an NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and a violation of W. Va. Code § 22-11-8.

113.    Unless enjoined, the Sewer District's violations are likely to continue.

114.    Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Section 22 of the WPCA, W. Va. Code § 22-11-22, the Sewer District is liable for injunctive relief.

115.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, the Sewer District is liable for civil penalties of up to $37,500 per day of violation for each violation of NPDES Permit No. WV0082759 occurring after December 6, 2013 through November 2, 2015; and up to $56,460 per day of violation for each violation occurring after November 2, 2015.

116.    Pursuant to W. Va. Code § 22-11-22, the Sewer District is liable for civil penalties up to $25,000 per day for each SSO.

### SIXTH CLAIM FOR RELIEF
**Violations of NPDES Permit No. WV0116025**
**Municipal Separate Storm Sewer System**

117.    The allegations of the foregoing Paragraphs are realleged and incorporated herein by reference.

118.    Pursuant to Section 402(a) of the CWA, 33 U.S.C. § 1342(a), WVDEP granted coverage under the 2009-2014 MS4 Permit and the 2014-2019 MS4 Permit (collectively, the "MS4 Permits") to the Sewer District, for operation of the Berkeley County MS4.

119.    The MS4 Permits required the Sewer District to develop and submit a stormwater management program ("SWMP") to WVDEP for approval, and then implement the terms of the approved SWMP. The MS4 Permits provide that the SWMP, once approved "will hereby be made terms and conditions of the permit with like effects as if all such information were set forth herein."

120.    On March 14, 2014, the Sewer District submitted a SWMP to WVDEP for approval. WVDEP approved the Sewer District's SWMP on October 16, 2014, with conditions (the "2014 SWMP"). WVDEP approved an updated SWMP on May 24, 2017.

121.    Part II.C.2 of the 2009-2014 MS4 Permit provides that "existing permittees must follow previously approved schedules until approval is received for updated SWMPs." Under this provision, the 2014 SWMP was in effect at all times relevant to this Complaint.

122.    The Sewer District has violated multiple conditions and limitations in the MS4 Permits, as described below.

**MCM 3: Illicit Discharge Detection and Elimination ("IDDE") Program**

123.    <u>Failure to Implement IDDE Program</u>. Part II.C.7.c.4 of the 2014-2019 MS4 Permit required the Sewer District to "follow the schedule for IDDE program components in the currently approved SWMP."

124.    At the time of the 2016 MS4 Inspection, the 2014 SWMP was the "currently approved SWMP" for the Berkeley MS4, within the meaning of Part II.C.7.c.4 of the 2014-2019 MS4 Permit.

125.    The 2014 SWMP required Berkeley to have an IDDE program fully implemented by October 16, 2015.

126.    During the 2016 MS4 Inspection, the Sewer District stated that it did not have an

IDDE program.

127. The Sewer District's failure to implement an IDDE program by the schedule set forth in the 2014 SWMP is a violation of Part II.C.7.c.4 of the 2014-2019 MS4 Permit.

128. Failure to Fund IDDE Program. The MS4 Permits required that the IDDE program be adequately funded to fulfill the permit requirements. 2009-2014 Permit, Part II.C.b.3.b; 2014-2019 Permit, Part II.C.7.c.13.

129. At the 2016 MS4 Inspection, the Sewer District stated that since the transition of the program in 2010, it had yet to implement a stormwater fee or any other funding mechanism for the IDDE Program, in violation of the MS4 Permits.

130. On October 6, 2019, the Berkeley County Council voted to establish a stormwater fee for residents of Berkeley County, except for the City of Martinsburg.

131. Failure to Map Storm Sewer System. The 2009-2014 Permit required that the Sewer District develop a map of its storm sewer system including certain specified information within one year after approval of the 2014 SWMP, and update the map annually thereafter. 2009-2014 Permit, Part II.C.b.3 & II.C.b.3.a. The 2014-2019 Permit likewise required the Sewer District to annually update a map of its storm sewer system. 2014-2019 Permit, Part II.C.7.c.6.

132. At the 2016 MS4 Inspection, the Sewer District stated that it had not developed a storm sewer system map, in violation of the MS4 Permits.

133. Failure to Conduct Field Assessment Activities. The 2009-2014 Permit required that the Sewer District begin implementation of field assessment activities, including visual inspections and screening for illicit connections, within one year after approval of the 2014 SWMP. 2009-2014 Permit, Part II.C.b.3 & II.C.b.3.c. The 2014-2019 Permit likewise required the Sewer District to implement field assessment activities, including inspections and screening

for illicit connections. 2014-2019 Permit, Part II.C.7.c.20.

134.    At the 2016 MS4 Inspection, the Sewer District stated that they were not performing any IDDE inspections or field screenings, in violation of the MS4 Permits.

135.    Failure to Develop Procedures for Tracing and Removing Illicit Discharges. The 2009-2014 Permit required the Sewer District to develop and implement an ongoing program to detect and remove illicit connections, including procedures for tracing and removing the source of an illicit discharge, within one year after approval of the 2014 SWMP. 2009-2014 Permit, Part II.C.b.3 & II.C.B.3.c.iv-v. The 2014-2019 Permit likewise required that the Sewer District implement procedures for tracing and removing the source of illicit discharges as part of its SWMP. 2014-2019 Permit Part II.C.7.c.24, c.4.

136.    At the 2016 MS4 Inspection, the Sewer District stated that it did not have a procedure for tracing or removing the source of illicit discharges, in violation of the MS4 Permits.

137.    Failure to Provide IDDE Training. The 2009-2014 Permit required the Sewer District to provide appropriate training for municipal staff on the identification and reporting of illicit discharges into MS4s, within one year after approval of the 2014 SWMP. 2009-2014 Permit Part II.C.b.3 & II.C.b.3.f. The 2014-2019 Permit likewise required Berkeley to provide annual training to municipal field staff who are responsible for identification, investigation, termination, cleanup, and reporting of illicit discharges, including spills, improper disposal and illicit connections. 2014-2019 Permit, Part II.c.7.c.30.

138.    At the 2016 MS4 Inspection, the Sewer District stated that it did not provide training to staff members regarding illicit discharges, in violation of the MS4 Permits.

**MCM 6: Pollution Prevention & Good Housekeeping for Municipal Operations**

139.    <u>Failure to Inspect</u>. The 2009-2014 Permit required the Sewer District to develop and implement an operations and maintenance program for municipal facilities that included annual inspections to determine if maintenance standards were being met, within one year of approval of the 2014 SWMP. 2009-2014 Permit. Part II.C.b.6 & II.C.b.6.a. The 2014-2019 Permit likewise required the Sewer District to establish a schedule of no less than once per calendar year for performing inspections of good housekeeping and maintenance programs at municipal facilities to determine if maintenance standards were being met. *Id.* Part II.C.7.f.5.

140.    At the 2016 MS4 Inspection, the Sewer District stated that it was not performing any inspections of municipal facilities and did not have any schedules for that work, in violation of the MS4 Permits.

141.    <u>Failure to Train</u>. The 2009-2014 Permit required the Sewer District to develop and implement an on-going training program for employees whose construction, operations or maintenance job functions may impact stormwater quality, within one year after approval of the 2014 SWMP. 2009-2014 Permit, Part II.C.b.6 & II.C.b.6.c. The 2014-2019 Permit likewise required that the Sewer District train its employees to prevent or reduce polluted runoff from municipal operations. 2014-2019 Permit, Part II.C.7.f.8.

142.    At the 2016 MS4 Inspection, the Sewer District stated that it did not have a training program for workers for municipal operations involving stormwater, in violation of the MS4 Permits.

143.    <u>Failure to Identify and Obtain Coverage for Industrial Facilities</u>. The 2009-2014 required the Sewer District to obtain a permit for stormwater discharges from industrial activities under the Sewer District's ownership or operation, where such discharges are not already

covered under an applicable general or individual NPDES permit. 2009-2014 Permit, Part II.C.6 & II.C.6.d. The 2014-2019 Permit required the Sewer District to identify, as part of their SWMP, industrial facilities under Berkeley's control and to include the location, type of activity, individual WV/NPDES permit number, or registration number if under WV/NPDES Multi-Sector General Water Pollution Control Permit. 2014-2019 Permit, Part II.C.7.f.14.

144.    At the 2016 MS4 Inspection, the Sewer District stated that it did not have a list of all of industrial facilities owned or operated by the Sewer District, nor are such facilities identified in any SWMP, in violation of the MS4 Permits.

**Failure to Conduct Stormwater Monitoring**

145.    The MS4 Permits required the Sewer District to monitor stormwater from a representative outfall. 2009-2014 Permit, Part IV.B; 2014-2019 Permit, Part IV.A.1.

146.    At the 2016 MS4 Inspection, the Sewer District stated that it had identified an outfall to monitor but had not conducted the required benchmark monitoring, in violation of the MS4 Permits.

**Failure to Report**

147.    The MS4 Permits required the Sewer District to submit an Annual Report to WVDEP providing information on the implementation of the stormwater management program. 2009-2014 Permit, Part IV.D; 2014-2019 Permit, Part II.B.10.

148.    At the 2016 MS4 Inspection, the Sewer District stated that it had not submitted any Annual Reports since the approval of the 2014 SWMP, in violation of the MS4 Permits.

**Relief**

149.    Each violation of NPDES Permit No. WV0116025 is a violation of a condition or limitation in an NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and a

violation of W. Va. Code § 22-11-8.

150.    Unless enjoined, the Sewer District's violations are likely to continue.

151.    Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Section 22 of the WPCA, W. Va. Code § 22-11-22, the Sewer District is liable for injunctive relief. Because the Storm Water District has assumed jurisdiction for the Berkeley County MS4 and applied for NPDES permit coverage, the right to relief with respect to the operation of the Berkeley County MS4 is asserted jointly and severally as to the Storm Water District.

152.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, the Sewer District is liable for civil penalties of up to $37,500 per day of violation for each violation of NPDES Permit No. WV0116025 occurring after January 12, 2009 through November 2, 2015; and up to $55,800 per day of violation for each violation occurring after November 2, 2015.

153.    Pursuant to W. Va. Code § 22-11-22, the Sewer District is liable for civil penalties up to $25,000 per day for each violation of NPDES Permit No. WV0116025.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on their behalf against Defendants as follows:

a)  Permanently enjoin the Sewer District from discharging pollutants except as expressly authorized by the CWA, the WPCA, and the limitations and conditions of applicable NPDES permits.

b)  Order Defendants to take all necessary steps to comply with the CWA and the WPCA, and the implementing regulations of those statutes, as well as with the limitations and conditions of the applicable NPDES permits.

c) Assess civil penalties against the Sewer District up to $37,500 per day for each violation of that occurred after January 12, 2009 through November 2, 2014; and up to $55,800 per day for each violation occurring after November 2, 2015.

d) Assess civil penalties against the Sewer District up to $25,000 per day for each violation under W. Va. Code § 22-11-22.

e) Award the Plaintiffs their costs in this action.

f) Grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

11/15/2021
Date

LAURA A. THOMS
DC Bar # 488784
Senior Attorney, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044
Telephone: (202) 305-0260
Fax: (202) 514-0097
Email: laura.thoms@usdoj.gov

FOR THE UNITED STATES OF AMERICA:

WILLIAM J. IHLENFELD, II
United States Attorney
Northern District of West Virginia


7-12-2021
Date

*Stephanie K. Savino*
Stephanie K. Savino
Assistant United States Attorney
Northern District of West Virginia

FOR THE STATE OF WEST VIRGINIA DEPARTMENT
OF ENVIRONMENTAL PROTECTION:

7/27/21
Date

SCOTT DRIVER
Senior Counsel
West Virginia Department of Environmental Protection
601 57th Street Southeast
Charleston, WV 25304
(304) 926-0499 x1453
Charles.S.Driver@wv.gov